1. That the plaintiff, Joseph Tagert, obtained a judgment against Anthony Walke, of Franklin County, for £ _____; upon which judgment a writ of fieri facias was issued and delivered to the defendant, who then was sheriff of Franklin.
2. That the defendant, by virtue of said writ of fieri facias, took possession of property to the amount of £ _____, consisting of a store of goods.
3. That Anthony Walke obtained an injunction against the plaintiff's judgment, which was served upon the defendant, who thereupon restored the goods which he had taken to Walke.
4. That Walke's injunction was dissolved upon Tagert's answer, but Walke had removed himself and property out of the State.
Upon inquiry, I find that the rule which prevailed here before the revolution was, that whenever an injunction issued, a bond was executed by the party obtaining it, conditioned to perform the final decree which should be made in the cause; this was filed in the chancery office, and was accepted in the room of the money, which, by the English practice, must be deposited when the injunction is obtained. Whenever this bond *Page 311 
was given, it would be highly unjust to sell the goods of the debtor; and if, in England, the goods were restored upon the money being deposited, then it will result that in this country the goods should be restored upon the filing of the bond. The reason why the bond is accepted here in lieu of the money is that in England money is more plentiful than in this country; and the plaintiff at law is rendered equally safe by the filing of bond with good security, as if the money was deposited.
The practice since 1782 has been uniformly to restore the (372) goods, from a belief that the sheriffs entertained, that the Judge who granted the injunction had one his duty by taking bond, or requiring the money to be deposited.
Some years ago Judge SPENCER granted an injunction, under which the sheriff restored a number of negroes, levied upon to satisfy a very considerable demand. The negroes were removed, the injunction was dissolved, the plaintiff at law completely lost his debt, and the conduct of the sheriff who restored the negroes was considered to be conformable to law and general usage; and no lawyer who was consulted would advise bringing a suit against him.
Another case which will serve to show that it was held to be the duty of the sheriff, upon being served with an injunction, to restore the goods, is that of Alexander Joice, former sheriff of Rockingham County, who refused to deliver the goods upon a Judge's fiat for an injunction, although no writ of injunction had then issued, and sold the property. For this he was indicted in Salisbury Superior Court and convicted of disobeying the judge's order. This case formed a public adjudication, and served as notice to all sheriffs who might be placed under similar circumstances. I have reason to think that this decision was not strictly conformable to law; yet it has established a practice which ought now to be adhered to.
The rule, then, in England, that the sheriff is bound to go on to sell, is counteracted by the practice in this country. How would a sheriff act if he cannot sell? In a great variety of instances, he could not keep the goods; if he is not bound to sell, he is not bound to keep the goods; and the consequence is that the goods must be restored to the complainant.
If, in England, an injunction be applied for after verdict, the money must be deposited before it can go. C. Cancel., 447 — same doctrine, 2 Ch. Ca., 4; 2 Bro. Ch., 185. And from these cases it clearly appears, that if the deposit is made the goods are to be restored.
Suppose the sheriff executes property which dies in his hands, he may levy again — the first service does not discharge the debtor; (373) and this proves that the rule is not true in the extent, as laid down *Page 312 
by Mr. Woods. Whatever the law on this subject may be, the sheriff is bound to obey the precept, to follow its words, to rely on the Judge, to believe that he had done his duty in taking a proper bond, and not to inquire into the legality of the writ. The words of the injunction are: "You are to forbear and desist from carrying the judgment into effect." If he has levied, this restrains him from selling; if he cannot sell, he is not bound to keep them; and the complainant is the only person entitled to the possession of them.
Baker, on the same side. If the law were otherwise than as laid down byMr. Haywood, the greatest injustice would be produced. Suppose the case of one imprisoned on a writ of capias ad satisfaciendum, who obtains an injunction; unless he is restored to his liberty he gains but little; indeed, he may, according to Mr. Wood's construction, put on the words of the injunction, be continued in confinement until he can prove a final determination of a tedious suit, notwithstanding his claims to relief are strong and undeniable. But if the party imprisoned, upon obtained an injunction — both of which practices are conformable to the general usage of the country.
Let us inquire how this case stands between the plaintiff and the defendant; it is a question of loss. The goods levied upon were not at most worth more than £ 140 or £ 150; either the plaintiff or defendant must lose it. This is a hard action, and one that ought to be considered stricti juris, and not to be favored. The jury, however, have found a verdict for the defendant. Justice does not require that the verdict should be set aside, nor that the defendant, who it is admitted acted uprightly and without fraud, should pay the debt out of his own pocket.
I therefore hope that the rule will be discharged.
(374) Woods, in reply. No case can be found where the property was restored, although the money was deposited. If a sheriff has money in his hands, and he is served with an injunction, he is bound to retain it, and has no authority to restore it. The sheriff is not to go back to inquire what was the practice previous to the year 1782; and as it is well known that no bonds to secure the principal sum have been taken since that time, greater caution is required for the sake of creditors. Does the injunction authorize the sheriff to recede? Surely not; it only authorizes him to stop; and certainly there is a material difference.
I cannot suppress the astonishment I feel in hearing of the indictment of the sheriff of Rockingham; to my mind, the conduct of the Attorney-General, in preferring an indictment against him for such a pretended *Page 313 
offense, was much more irregular than that of the sheriff who disobeyed the order of a Judge not directed to him, but to another; and his fate ought to excite our compassion, rather than furnish a general conclusion.
This is not such a case as comes under the general rule of hard actions, where new trials are refused. The sheriff ought to be informed what his duty was; if he did not think it worth while to seek for information, he ought to abide by the loss.
It is said in this case, in argument for the defendant, that before the revolution it was the practice of the Courts of Equity, upon granting injunctions after verdict, to direct bond with security to be taken for the amount of the sum for which the injunction was granted; and this practice was substituted in the room of the practice in England, which in such cases directed the money to be paid into court. The Act of 1782, ch. 11, declares that the Courts of Equity in this State shall possess all the powers and authorities that the Court of Chancery, which was formerly held in this State under the late government, exercised; so that if such were the practice before the revolution, it was the practice at the time when the injunction in question was granted; and the property seized by the defendant, as sheriff, and restored to Walke by him upon being served with the injunction, stood in the same (375) situation as if the money for which the injunction was granted had been directed to be paid into Court. If the money which the plaintiff claimed had been really paid into Court, I see no good reason why the property levied upon might not have been restored. The belief that the practice of taking bond, etc., as before spoken of, did exist before the revolution, derives some of its support from the circumstance that money at that time, in this country, was not so easily procured as in England, and of course directions to make deposits in Court could not be so easily complied with; and also from the circumstance that such a practice has prevailed for some years — at least since the revolution — and sheriffs, as far as I have observed, have conformed themselves to such a practice. If there had been a direction to stay the property levied upon in the hands of the sheriff, perhaps the case might have been different; it is not reduced to a certainty what the practice in such cases was before the revolution. I am glad, however, that this case can be decided on another ground. It is not pretended in this case the defendant, in any respect, acted a fraudulent part; he acted as every sheriff acted in a similar situation for a considerable time past. The case has been fairly examined by a jury, who have found a verdict for the defendant; it is a hard action. For these reasons I am not for granting a new trial. *Page 314